[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED AUGUST 6, 1996
The plaintiffs, Norfolk and Dedham Mutual Fire Insurance Company (Norfolk Dedham) and Liberty Mutual Fire Insurance Company (Liberty), have applied to vacate an uninsured motorist arbitration award. The defendant, Craig Wysocki, moves to confirm the award. CT Page 5273
The parties stipulated to the following facts. On October 29, 1989, while on a public road in Durham, the defendant was injured when an all-terrain vehicle (ATV) owned and operated by him collided with another ATV owned and operated by Hans Pedersen. Although both ATVs were uninsured, at the time, the defendant was the owner of a private passenger motor vehicle insured by Liberty for uninsured motorist coverage in the amount of $20,000. In addition, the defendant was insured under a policy issued to his mother by Norfolk Dedham which provided uninsured motorist coverage in the amount of $40,000.[1] As a result of the accident, the defendant made uninsured motorist claims against both policies. On October 2, 1995, the parties entered into arbitration, and on December 13, 1995, a majority of the arbitrators awarded the defendant $60,000, the maximum amount recoverable under the uninsured provisions of the two policies.[2]
On January 10, 1996, Norfolk Dedham filed an application to vacate, correct or modify the arbitration award (Docket No. CV96-77652); see General Statutes §§ 52-418[3] through 52-420; and on January 18, 1996, Liberty Mutual filed a separate application to vacate the award (Docket No. CV96-77652). The insurance companies argue that the award should be vacated because the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made. See General Statutes § 52-418(a) (4). Specifically, they contend that the arbitrators erred in finding that: (1) the Pedersen ATV was a motor vehicle to which the uninsured motor vehicle provisions of the policy applied; (2) coverage was not excluded by Part C, Exclusion A. 1. of the policies; and (3) the negligence of the defendant was not greater than the negligence of Pedersen. The defendant filed motions to confirm the award in both the Norfolk Dedham and Liberty Mutual actions on January 16 and 26, 1996, respectively. See General Statutes § 52-417. The two cases were consolidated on March 12, 1996.
The court must first determine the standard it is required to apply in reviewing the decision of the arbitrators. "This inquiry hinges on whether the arbitration was voluntary or compulsory, and, if voluntary, whether the submission was restricted or unrestricted. If the parties engaged in voluntary arbitration, the trial court's standard of review, provided that the submission was unrestricted, would be limited to whether the CT Page 5274 award conformed to the submission. Bridgeport v. ConnecticutPolice Dept. Employees Local 1159, 32 Conn. App. 289, 292-94,628 A.2d 1336, cert. denied, 227 Conn. 925, 632 A.2d 703 (1993). If the parties engaged in voluntary, but restricted, arbitration, the trial court's standard of review would be broader depending on the specific restriction . . . If the parties engaged in compulsory arbitration, . . . the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." (Citations omitted; internal quotation marks omitted.) Maluszewski v. Allstate Ins. Co., 34 Conn. App. 27,32-33, cert. denied, 229 Conn. 921 (1994).
General Statutes § 38a-336, formerly § 38-175c, provides that "[e]ach automobile liability insurance policy . . . which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding." General Statutes § 38a-336 (c). "This provision . . . makes arbitration of insurance coverage issues compulsory. Wilson v. Security Ins. Group, 199 Conn. 618,622-24, 509 A.2d 467 (1986). The statute does not say, however, land the Supreme Court has never held], that any other issues arising under an uninsured motorist policy are required to be arbitrated." (Emphasis in original.) Bodner v. United ServicesAutomobile Assn., 222 Conn. 480, 488, 610 A.2d 1212 (1992). Arbitration of such issues, therefore, are voluntary, and judicial review of the arbitrators' decision is limited to determining whether the award conforms to the submission. Id.,
488-89. In this case, the scope of submission was defined by the policy terms and conditions.
The amended arbitration provisions of both policies are nearly identical. Liberty's provision provides in part:
A. If we and an "insured" do not agree:
 1. Whether that person is legally entitled to recover damages under Part C; or 2. As to the amount of damages; the "insured" party may make a written demand for arbitration.[4]
The court interprets this provision as a voluntary, unrestricted submission with regard to damages and legal liability. See id., 488-90. Thus, with regard to coverage issues, the court must conduct a de novo review of the interpretation and application of the law by the arbitrators, and as to any other CT Page 5275 issues, the court need only determine whether the award conforms to the submission.
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact;Gurliacci v. Mayer, 218 Conn. 531, 567, 590 A.2d 914 (1991);Finley v. Aetna Life Casualty Co., 202 Conn. 190, 199,520 A.2d 208 (1987); [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Levine v. Massey, 232 Conn. 272, 277-78, 654 A.2d 737
(1995). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy . . . If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Internal quotation marks omitted.) O'Brien v. United States Fidelity Guaranty Co.,235 Conn. 837, 842, 669 A.2d 1221 (1996).
"It is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view . . . The premise behind the rule is simple. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests . . . A further, related rationale for the rule is that [s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter." (Citations omitted; internal quotation marks omitted.) Id., 843.
The insurance companies first argue that the defendant is not entitled to recover under the policies because an ATV is not a CT Page 5276 "motor vehicle" as defined by the General Statutes. Pursuant to General Statutes § 14-1 (47), "`[m]otor vehicle' means any vehicle propelled or drawn by any nonmuscular power, except aircraft, motor boats, . . . and any other vehicle not suitablefor operation on a highway . . ." (Emphasis added.) In addition, General Statutes § 14-379 defines an ATV as "a self-propelled vehicle designed to travel over unimproved terrain and which has been determined by the commissioner of motor vehicles to beunsuitable for operation on the public highways which is not eligible for registration under chapter 246 . . ." (Emphasis added.) Thus, the insurance companies contend that because ATVs are excluded from the statutory definition of motor vehicle, an ATV cannot be an uninsured motor vehicle within the meaning of the policies. The court disagrees.
Although an ATV does not meet the statutory definition of motor vehicle, resort to the statutory definition is unnecessary in this instance. For purposes of uninsured motorist coverage, both policies define an uninsured motor vehicle as "a land motor vehicle of any type" to which no bodily injury liability bond or policy applies at the time of the accident, except any vehicle or equipment "designed mainly for use off public roads while not onpublic roads." (Emphasis added.) Although ATVs are designed mainly for use off public roads, the accident in this case occurred on a public road. Accordingly, the court finds that the Pedersen ATV qualifies as an uninsured motor vehicle for purposes of the uninsured motorist coverage afforded under both insurance policies. Accord Kashmark v. Western Ins. Companies,344 N.W.2d 844, 846 (Minn. 1984).
The insurance companies argue in the alternative, however, that even if the Pedersen ATV qualifies as an uninsured motor vehicle under the policies, the defendant should be denied coverage pursuant to exclusion provisions in their respective policies.
The relevant exclusion provision of Norfolk Dedham's policy provides as follows:
 We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:
 1. While occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy. CT Page 5277 This includes a trailer of any type used with that vehicle.
(Emphasis in original.) This exclusion is based on General Statutes § 38a-336 which provides, in pertinent part, that:
 No insurer shall be required to provide uninsured and underinsured motorist coverage to (A) a named insured or relatives residing in his household while occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured.
General Statutes § 38a-336 (a)(1).
"When an insurer seeks to limit its liability for uninsured or underinsured motorist coverage based on the regulation issued pursuant to § 38-175c [now § 38a-336], it may do so only to the extent that the regulation expressly authorizes . . . Similarly, where an insurer seeks to limit its liability based on the statute itself, rather than on the regulation, it should only be able to do so to the extent that the statute expressly authorizes. In order for a policy exclusion to be expressly authorized by the statute, there must be substantial congruence between the statutory provision and the policy provision." (Citations omitted; internal quotation marks omitted.)Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646, 674,591 A.2d 101 (1991).
In analyzing a policy exclusion similar to the Norfolk 
Dedham exclusion at issue here, the Supreme Court, in Chmielewskiv. Aetna Casualty Surety Co., supra, found the requisite congruence to be lacking.[5] The court stated that:
 [A]lthough there are substantial similarities between the terms of the statute and the policy exclusion, there are also substantial dissimilarities: whereas the statute requires that the vehicle be uninsured or underinsured, the policy does not; whereas the statute requires that the named insured or resident relative be struck "as a pedestrian," the policy requires only that they be "struck"; CT Page 5278 and whereas the policy exclusion requires that the vehicle not be covered under the policy, the statute does not.
 A "limitation of liability on uninsured or underinsured motorist coverage must be construed most strongly against the insurer." American Universal Ins. Co. v. DelGreco, [205 Conn. 178, 196, 530 A.2d 171 (1987)]. Furthermore, any ambiguity in policy language regarding coverage must be construed against the insurer. Avis Rent A Car System, Inc. v. Liberty Mutual Ins. Co., 203 Conn. 667, 672, 526 A.2d 522 (1987). In light of these well established principles, and in light of the permissive nature of the statutory limitation, we conclude that the policy exclusion at issue here was not authorized by the statutory exclusion and did not operate to exclude coverage in this case.
Id., 675. Similarly, this court finds that the Norfolk Dedham policy exclusion was not authorized by the statute and, thus, does not operate to exclude coverage to the defendant.
Although the relevant Liberty policy exclusion was once identical to that of Norfolk Dedham, it was amended to provide:
 We do not provide Uninsured Motorist Coverage for "bodily injury" sustained by any person:
 1. While "occupying," or when struck by, any motor vehicle or motorcycle owned by that person or owned by you for which the security required by the Connecticut Financial Responsibility Act is not in effect. This includes a trailer of any type used with that vehicle.
(Emphasis added.) Liberty argues that the exclusion applies because the defendant was occupying an ATV owned by him on which there was no insurance at the time of the accident. Regardless of whether this is an authorized exclusion, it is inapplicable in this case because there is no requirement that ATVs be insured under Connecticut law. See General Statutes § 38a-334 (a). Thus, the Liberty policy exclusion does not operate to preclude coverage in this case. CT Page 5279
In addition, the defendant contends that he is not precluded from coverage because his ATV does not qualify as a "motor vehicle" with regard to the policy exclusions. Liberty argues in opposition, however, that the defendant cannot have it both ways — i.e., if the Pedersen ATV qualifies as a motor vehicle for purposes of the definition of an uninsured motor vehicle under the policy, then the defendant's ATV must be considered a motor vehicle for purposes of the definition of motor vehicle in the exclusion provision. The court disagrees.
As noted by the defendant, pursuant to the policies, an uninsured motor vehicle means "a land motor vehicle of any type."[6] Thus, the insurance companies elected to use a broader definition of motor vehicle than that found in General Statutes § 14-1 (47). As discussed earlier, the Pedersen ATV qualifies as an uninsured motor vehicle under the policy definitions of uninsured motor vehicle. The term motor vehicle is not, however, modified by any language with regard to the exclusion provisions, nor is it defined elsewhere in the policy. Thus, the defendant contends that the statutory definition of motor vehicle, which does not include ATVs,[7] should control. If adoption of the statutory definition of motor vehicle was intended for purposes of the exclusion provisions, then the defendant would not be precluded from coverage for the injuries sustained while occupying his ATV. If the insurance companies did not intend to adopt the statutory definition of motor vehicle with regard to the exclusion provisions, then, at the very least, it may be said that there is an ambiguity regarding the definition. Once again, "any ambiguity in policy language regarding coverage must be construed against the insurer."Chmielewski v. Aetna Casualty Surety Co., supra, 218 Conn. 675.
In concluding, the court acknowledges that "our courts have wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation . . . [I]ts autonomy requires a minimum of judicial intrusion.' (Citations omitted; internal quotation marks omitted.) Metropolitan DistrictCommission v. AFSCME, 237 Conn. 114, 118 (1996). "The scope of judicial review in an arbitration action is expressly limited by the terms of [General Statutes] § 52-418 . . . In the absence of a showing of a violation of the statute, the courts should not interfere in the arbitral decision." (Citation omitted.) Id. In the present case, the court finds the arbitrators' decision to be in accordance with the applicable law and the submission. CT Page 5280 Accordingly, the applications to vacate the award are denied, and the defendant's motions to confirm are granted.
STANLEY, J.